UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| KAREN K. JONES,<br>      Plaintiff,<br><br>v.<br><br>TRUSTEES OF ISOTHERMAL COMMUNITY COLLEGE, WALTER DALTON, KIMBERLY GOLD, and STEPHAN MATHENY,<br><br>      Defendants. | C.A. No: 1:18-CV-00367-MR-WMC |

## PLAINTIFF KAREN JONES' STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION TO SET ASIDE MEMORANDUM OF SETTLEMENT

NOW COMES Plaintiff Karen K. Jones (hereinafter "Plaintiff") in Pro Se hereby submits this Statement of Facts in Support of her Motion to Set Aside the Memorandum of Settlement in the above reference matter.

1. On or about February 17, 2020, Plaintiff and Defendants (hereinafter collectively the "Parties") engaged in mediation, the result of which was a handwritten, barely legible listing of terms and conditions titled, "Memorandum of Settlement." (hereinafter "Memorandum"). *See Exhibit A attached to Plaintiff's Memorandum of Law in Support of Motion to Set Aside Memorandum of Settlement.*

1

2. Among other terms, the Memorandum stated, "Defendants shall pay $39,650 within 14 days from approval of this settlement by the Board of Trustees." *See Exhibit A: Memorandum.*

3. Although there is a space in the Memorandum where Defendants would be named in this statement, this space is blank, and likewise, on the second page, the space provided for the signature of the Chairman of the Board of Trustees (hereinafter "Chairman") is blank. *See Exhibit A: Memorandum.*

4. Plaintiff was advised the Board of Trustees of Isothermal Community College (hereinafter "Board") allegedly approved the Memorandum on March 24, 2020, and pursuant to the Memorandum payment was then due to Plaintiff on April 6, 2020.

5. To date, Plaintiff is not in receipt of a fully executed and signed Memorandum by all parties or other verification the Board approved the Memorandum such as Board Minutes. An email from Defendants received by Plaintiff (forwarded by former Counsel without attachment) on April 13, 2020, indicated the Chairman had been given authority to approve a "Final Agreement" and referenced Defendants' consideration of an "original agreement" and an "attached revised version." *See Exhibit B: attached to Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Set Aside Memorandum of Settlement: Email of April 13, 2020.*

6. To Plaintiff's knowledge the Chairman has never signed the Memorandum.

7. Aside from arrangements for payment and voluntary dismissal conditions in the above referenced matter, the agreed upon Memorandum included other provisions/terms: denial of liability; Medicare lien certification; settlement terms to be kept confidential, but subject to the Public Records Act; personnel file letter substitution; payment by 1099; Defendant to provide neutral reference via human resources; and the Memorandum is subject to approval by the Board at its first available meeting. *See Exhibit A: Memorandum.*

8. Although the Memorandum included a statement regarding execution of a general release, no discussion took place during mediation about the general release (hereinafter "General Release"), the timeframe or deadline to execute, and certainly no agreement of any specific general release terms. The scope of discussion pertained to the current lawsuit (referred to in the Memorandum as "all issues in this litigation") and agreement that "parties shall execute a voluntary dismissal with prejudice upon Plaintiff's receipt of the settlement proceeds." *See Exhibit A: Memorandum.*

9. On or about March 19, 2020, Plaintiff received an email with an attachment which Plaintiff's now former attorney (hereinafter "former Counsel") about the aforementioned proposed General Release which was a document titled CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE IN FULL"

(hereinafter "Final Agreement"). This Final Agreement included more than thirty (30) additional terms never discussed or agreed upon during mediation. *See Exhibit C attached to Plaintiff's Memorandum of Law in Support of Motion to Set Aside Memorandum of Settlement: Email and Confidential Settlement Agreement and Release in Full dated March 19, 2020.*

10. Among terms included in the Final Agreement not discussed during mediation were provisions covering the Older Worker's Benefits Protection Act/ADEA and highly unusual terms such as a waiver disallowing Plaintiff from aiding in prosecution of any claim, suit or action brought against any Defendant or Releasee; Defendants' request that Plaintiff abide by their instructions for complying with court ordered and/or by subpoena disclosure of settlement agreement which dictates document production or testimony be done *in camera* and under seal; strict confidentiality restrictions on Plaintiff's family and others under penalty of cause of action, damages, and injunctive relief; a term seeking to govern any remark by Plaintiff which could cause Defendants embarrassment, etc. *See Exhibit C.*

11. While the scope of the Memorandum was limited to voluntary dismissal of the above captioned case, the proposed Final Agreement included a "Release of Defendants by Plaintiff" which was more than a half-page long and encompassed

anything and everybody past, present, future, and forever, known and unknown, etc. *See Exhibit C.*

12. Plaintiff, who was accompanied by her husband at mediation, was stunned by the content of the document. Upon request for clarification, former Counsel replied, "Please don't get distracted by the fact that this Release has more words…"

*See Exhibit D attached to Plaintiff's Memorandum of Law in Support of Motion to Set Aside Memorandum of Settlement: Email of 9:45 a.m. on March 23, 2020.*

13. Due to the insertion of more than thirty (30) additional terms in the Final Agreement not discussed or agreed to during mediation, and the fact that Plaintiff did not agree to "an agreement to the agreement" which constitutes a counteroffer, Plaintiff asserts and believes Defendants breached the covenant of good faith and fair dealing.

14. After receiving the Final Agreement, from the onset of communications with her now-former Counsel, Plaintiff articulated her position consistently and with clarity and did not waiver in communicating her interpretation of Memorandum terms and conditions as well as her willingness to abide by her understanding of the agreement. In fact, in the early days of this discussion Plaintiff asked former Counsel more than once about filing a Motion to Enforce the Memorandum. *See Exhibit D.*

5

15. In the course of these communications, Plaintiff posed questions regarding Memorandum terms and conditions and received varying interpretations and explanations of Memorandum terms and conditions from both her former Counsel and Defendants' Counsel. Due to these varying explanations and interpretations provided to her, Plaintiff increasingly became aware all Parties were not in agreement with the material terms of the Memorandum; thus, there was no meeting of the minds.

16. In discussing and explaining the confusion about the Memorandum, e.g., timing and varying interpretations of its terms and conditions, Plaintiff's former Counsel referenced assumptions, miscommunication, and weak Memorandum language. *See Exhibit E: attached to Plaintiff's Memorandum of Law in Support of Motion to Set Aside Memorandum of Settlement: Emails of April 15, 2020* . In fact, Counsel thrice described weak Memorandum language in referencing language "poorly worded," a "poor choice of language," and language "poorly chosen, as a result of a long stressful day for all involved..." *See Exhibit E: attached to Plaintiff's Memorandum of Law in Support of Motion to Set Aside Memorandum of Settlement: Emails between Plaintiff and former counsel* .

17. Further, the mediation Memorandum lacked specificity as follows: 1) The Memorandum did not include a provision for a follow-up settlement agreement (just a General Release). The nine (9) pages proposed follow-up settlement

agreement document contained terms never discussed during mediation. *See Exhibit C.*

18. Defendants' misrepresentation of the General Release as a "final agreement" which introduces more than thirty (30) additional terms and conditions to the Memorandum never discussed or agreed upon during mediation constitutes a counteroffer, thus the Memorandum is not a complete agreement, thus making the Memorandum voidable. *See Exhibit A; Exhibit C.*

19. At no time after mediation and the signing of the Mediation Agreement was Plaintiff's now-former Counsel, authorized, in writing or verbally, to agree to any additional terms not discussed and/or agreed upon during mediation and not approved by Plaintiff. Nor was Plaintiff's former Counsel in any manner authorized to act on Plaintiff's behalf to negotiate and agree to additional terms not discussed and/or agreed to during mediation.

20. All Motions to Extend Deadlines were not applicable to the General Release since the Memorandum had not indicated a deadline or timeframe for its execution. *See Exhibit A.*

21. Defendants have breached the terms of the Memorandum in their failure to timely execute payment under the terms of the Memorandum.

22. Defendants have breached the terms of the Memorandum for failure to draft an acceptable General Release.

7

23. Defendants have breached the terms of the Memorandum by surreptitiously inserting terms into the alleged Final Agreement not discussed and/or agreed to during mediation.

24. Thus, since Defendants' alleged Final Agreement contains terms and provisions not discussed and/or agreed to during mediation, the Final Agreement constitutes a counteroffer to the Memorandum, an agreement to the agreement, and the Memorandum was not a complete agreement, thus making the Memorandum void.

25. Thus, after weeks of Parties discussing varying interpretations of the terms and conditions within the Memorandum, it is obvious the terms and conditions are ambiguous at best, and there was no meeting of the minds.

26. On or about mid-April, Plaintiff emailed her former Counsel about Parties to the Memorandum not being "on the same page," and asked former Counsel specifically to address various issues with Defendants. *See Exhibit F attached to Plaintiff's Memorandum of Law in Support of Motion to Set Aside Memorandum of Settlement: Emails between Plaintiff and former Counsel dated April 22, 2020.*

27. On or about April 29, 2020, former Counsel addressed issues with Defendants via Email to clarify several important details: 1) "Your client has not presented a document which constitutes a General Release." 2) "While the MOS stipulated payment within 14 days of Board of Trustees approval, there is no

8

Case 1:18-cv-00367-MR-WCM   Document 29-1   Filed 05/26/20   Page 8 of 16

deadline for my client to sign a general release in the MOS." 3) "The MOS does not include a term or any suggestion or reference to a Settlement Agreement or other 'Final Agreement,' and my client has no obligation whatsoever related to this type of document." *See Exhibit G attached to Plaintiff's Memorandum of Law in support of Motion to Set Aside Memorandum of Settlement: Email of April 29, 2020.*

28. On or about April 29 and 30, 2020, Plaintiff addressed a one very specific issue with the Final Agreement and the manner in which Defendants interpreted this particular term which could cause substantial harm and damage to Plaintiff. In fact, if there had been any indication of Defendants' intent as to this term during mediation, Plaintiff would have never signed the Memorandum. *See Exhibit H attached to Plaintiff's Memorandum of in Support of Motion to Set Aside Memorandum of Settlement: Emails of April 29 and April 30, 2020.*

29. Hours after Plaintiff's email on or about April 29, 2020 describing how Memorandum terms would cause damage and harm to Plaintiff, Plaintiff's Counsel received an email from Defendants' Counsel indicating the mediator, Frank Goldsmith, was holding a settlement check which he could release in exchange for a signed General Release. *See Exhibit I attached in Support of Motion to Set Aside Memorandum of Settlement: Emails of April 29, 2020.*

30. Since Plaintiff had already discovered there was no meeting of the minds at mediation and due to the potential for harm and damage to Plaintiff as well as the Final Agreement constituting a counteroffer, and agreement to the agreement containing more than thirty (30) additional terms not discussed in mediation, the Final Agreement is moot.

31. On or about April 30, 2020, Plaintiff sent Counsel an email describing how communications and actions of Parties following mediation demonstrated a failure of Parties to agree to material terms, detailed a long list of concerns regarding Counsel's missteps, and notified Counsel that Plaintiff was considering termination of his representation. Further it was clear that the Memorandum was not a complete agreement.

32. In fact, communications and conduct of Parties is clear that the Memorandum was an "agreement to later agree," thus voiding the contract. For example, weeks after mediation, Plaintiff's former Counsel stated in an email, "The reason the 14 day language ended up being poorly worded is that, at mediation, we all assumed we'd have a draft of the additional general release document that everyone had agreed to and you may have even signed before the Board even voted on approving the settlement..." *See Exhibit J attached in support of Motion to Set Aside Memorandum of Settlement: Email of April 15, 2020.*

33. In the proceeding weeks settlement prospects became less hopeful, and in anticipation of termination counsel by Plaintiff, Plaintiff corresponded with former Counsel and office administration in order to clarify the account balance. Plaintiff offered to pay the balance of her account as settlement payment was still pending. *See Exhibit D attached to Plaintiff's Memorandum of Law in support of Motion to Set Aside Memorandum of Settlement: Email of March 24, 2020 and April 20, 2020.*

34. Plaintiff's former Counsel suggested that Plaintiff seek additional legal opinions. Plaintiff followed former Counsel's recommendation. Unfortunately, Plaintiff's efforts to gain additional legal opinions were hampered by Plaintiff's former Counsel refusing to share Plaintiff's case file, including Discovery content and how to obtain access to depositions.

35. In addition to seeking additional legal opinions, Plaintiff suggested returning to mediation to hammer out agreed upon terms and conditions not discussed at the initial mediation. These suggestions were not received affirmatively by Plaintiff's counsel, but instead Plaintiff's former Counsel redirected discussion back to the Final Agreement.

36. Defendants' continued to send versions of the Final Agreement while not credibly addressing Plaintiff's concerns with material terms and with no substantial

changes to the concerns Plaintiff expressed personally and through her former Counsel.

37. On May 6, 2020, Plaintiff's primary healthcare provider expressed deep concern regarding the toll the post-mediation ordeal was taking on Plaintiff. Although Plaintiff was not in a position to succumb to the pressure, Plaintiff's healthcare provider urged her to find a solution.

38. On or about May 14, 2020, former Counsel acknowledged his inappropriate actions, which had been a source of unending duress since mid-March, and apologized. See Exhibit K *attached to Plaintiff's Memorandum of Law in support of Motion to Set Aside Memorandum of Settlement: Email of May 14, 2020.*

39. On or about May 15, 2020, Plaintiff reported back to Counsel regarding Plaintiff's discussion with North Carolina Treasurer staff, licensed attorneys, and a retired judge/licensed attorney. The consensus from those conversations was that communications following mediation made it clear there was no meeting of minds at mediation. None of the parties consulted believed that a judge would coerce Plaintiff's acceptance of terms which she did not agree to at mediation. See Exhibit K *attached to Plaintiff's Memorandum of Law in support of Motion to Set Aside Memorandum of Settlement: Email of May 15, 2020.*

40. Although Plaintiff's former Counsel was aware of the detrimental effect of his actions and the fact the Final Agreement did not reflect Plaintiff's agreement

12

made in mediation and reflected in the Memorandum, and was not in Plaintiff's best interest, Plaintiff's counsel continued his efforts to coerce Plaintiff to sign the Final Agreement in an email communication on May 18, 2020. *See Exhibit L attached to Plaintiff's Memorandum of Law in support of Motion to Set Aside Memorandum of Settlement: Email of May 18, 2020.*

41. Plaintiff replied to former Counsel on or about May 18, 2020, indicating she had reviewed communications between former Counsel and her covering the timespan starting on or about March 19, 2020. While Plaintiff had often repeated the same answers over and over, she instead instructed former Counsel to, "Go back and review and stop trying to pressure me into some sort of 'after the fact' agreement." *See Exhibit K attached to Plaintiff's Memorandum of Law in support of Motion to Set Aside Memorandum of Settlement: Email of May 18, 2020.*

42. Among the communications Plaintiff was referencing for former Counsel to review was an email from on or about March 23, 2020, when she stated it was unacceptable for Defendants to use "future"/forever type language in the Final Agreement. Notably, the final draft of the Final Agreement received by Plaintiff continued to reflect that language in spite of her many communications since mid-March rejecting that language and reminding Defendants and her former Counsel the scope of mediation only pertained to the current lawsuit and agreement that parties would execute a voluntary dismissal following receipt of settlement

proceeds. *See Exhibit D attached to Plaintiff's Memorandum of Law in support of Motion to Set Aside Memorandum of Settlement: Email of 3:02 p.m., March 23, 2020.*

43. As of May 26, 2020 (as of the date of the filing of Plaintiff's Motion to Set Aside the Memorandum of Settlement), there has been no meeting of the minds between Plaintiff and her former Counsel, who have parted ways at Plaintiff's request; there has been no meeting of the minds between Plaintiff and Defendants as to the interpretation of Memorandum material terms and conditions terms; and Defendants have not shown a willingness to consider solutions but instead have displayed only a singular focus on their efforts to gain Plaintiff's approval for the Final Agreement.

44. Plaintiff asserts the Final Agreement is an agreement to the agreement, thus constitutes a counteroffer, the terms of the Memorandum are ambiguous, at best, the Memorandum clearly is not a complete agreement, thus making the Memorandum unenforceable and voidable.

45. Plaintiff asserts that based on the aforementioned it is clear there was no meeting of the minds during mediation, thus the Memorandum is voidable.

46. Plaintiff further asserts that the Memorandum was never signed by the Chairman, thus there is no agreement.

47. Plaintiff asserts and believes Defendants' breached the covenant of good faith and fair dealing thus, Plaintiff respectfully submits her Motion to Set Aside the Memorandum of Settlement, and respectfully requests the appropriate relief from this Honorable Court.

Dated: May 26, 2020

*Karen K. Jones*
Karen K. Jones, Plaintiff In Pro Se
201 Fairforest Drive
Rutherfordton, NC 28139
(828) 429-0179
kikjones@me.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 26, 2020, Plaintiff pro se filed the foregoing Statement of Facts in Support of Motion to Set Aside Memorandum of Agreement on the following Parties, in the following manner:

Via Certified Mail:

Matthew J. Gilley, Attorney for Defendants

Ford Harrison

100 Dunbar Street, Suite 300

Spartanburg, SC 29306

*Karen K. Jones*
Karen K. Jones, Plaintiff In Pro Se