THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00367-MR-WCM

| | |
|---|---|
| KAREN K. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER AND** |
| ) | **JUDGMENT** |
| ) | |
| TRUSTEES OF ISOTHERMAL ) | |
| COMMUNITY COLLEGE, WALTER ) | |
| DALTON, KIMBERLY GOLD, and ) | |
| STEPHEN MATHENY, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Enforcement of Settlement Agreement and Sanctions against Plaintiff [Doc. 24] and the Plaintiff's Motion to Set Aside Memorandum of Settlement [Doc. 29].

**I.    BACKGROUND**

In November 2018, the Plaintiff Karen K. Jones brought this action in the Superior Court of Rutherford County against the Defendants Trustees of Isothermal Community College ("Board of Trustees"), Walter Dalton ("Dalton"), Kimberly Gold ("Gold"), and Stephen Matheny ("Matheny") (collectively, "the Defendants"), asserting claims under the Family Medical

Leave Act, 29 U.S.C. § 2601, *et seq.*; the Equal Pay Act, 29 U.S.C. § 201, *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*; the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-240, *et seq.*; the North Carolina Whistleblower Protection Act, N.C. Gen. Stat. § 126-84, *et seq.*; and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et seq.* [Doc. 1-1 at 6-15]. The Defendants removed the action to this Court in December 2018. [Doc. 1]. Thereafter, a Pretrial Order and Case Management Plan was entered, setting this matter for trial in May 2020. [Doc. 9].

On February 17, 2020, the parties met for a mediated settlement conference with mediator Frank Goldsmith. At the mediation, the parties[1] executed a Memorandum of Settlement, which included the following language:

> The parties agree that **all issues** in this litigation **are settled and resolved** on the following terms:
> …
> Plaintiff shall execute **a general release of all claims** in favor of Defendants, in a form acceptable to counsel for the parties, **such release to be**

---

[1] The Memorandum of Settlement was signed by the Plaintiff, her counsel, the Defendants' counsel, and Defendants Dalton, Gold, and Metheny. The Memorandum stipulated that the parties' settlement was "subject to approval by defendant Board of Trustees, at [its] next available meeting." [Doc. 24-1 at 2].

> **drafted by counsel for Defendants**. **The parties shall execute and file a voluntary dismissal with prejudice** upon Plaintiff's receipt of the settlement proceeds. Other provisions to be contained in release or settlement agreement (if any): denial of liability; Medicare lien certification; settlement terms to be kept confidential by plaintiff and not publicized by defendants, but subject to public records act.
>
> …
>
> Other terms of settlement: Plaintiff will substitute a letter of resignation dated 6/30/16 in lieu of letter of non-renewal of contract; Payment to be made on a form 1099; Defendant to provide neutral reference in response to a request; plaintiff shall direct all such requests to Director of Human Resources. **Settlement is subject to approval by defendants' Board of Trustees, at next available meeting.**
>
> The parties and their attorneys stipulate and agree that if necessary, **the Court may enforce this agreement by entering judgment based upon the terms set forth herein**.

[Doc. 24-1 at 2-3 (emphasis added)].

On February 19, 2020, the mediator filed a mediation report with the Court advising that the parties had reached agreement on all issues, and that the settlement would be presented to the Board of Trustees at their next available meeting, which was scheduled to occur on March 24, 2020.[2] [Doc.

---

[2] As a public body subject to North Carolina open records statute, the Board of Trustees acts as a body during properly called meetings, during which it may receive legal advice in closed session as to the settlement of legal matters. N.C. Gen. Stat. § 143-318.11(a)(3). Ultimately, final outcome must be reported in the body's minutes. Id. Such

3

19]. By text order entered on February 20, 2020, the Court took notice of the parties' settlement and directed that a stipulation of dismissal was be filed within forty-five (45) days, placing the deadline at April 6, 2020.

On March 24, 2020, the Board of Trustees considered the settlement terms and granted authority to Board Chair Roger Jolly to execute a Settlement Agreement consistent with the terms of the Memorandum of Settlement. [Doc. 24-2: Jolly Dec. at ¶ 1].

Counsel for the Defendants, Matthew J. Gilley, and counsel for the Plaintiff, Michael P. Thomas, engaged in correspondence by email over the following two-and-a-half months, through which they tried to produce a Settlement Agreement consistent with the Memorandum of Settlement that would be acceptable to the Plaintiff. The Defendants presented at least three drafts of such an agreement, each one shorter and more simplified than the preceding draft. On each occasion, the Plaintiff refused to agree to any agreement that included a general release of claims against the Defendants.

On April 29, 2020, counsel for the Defendants sent the Plaintiff's counsel a two-page settlement agreement consisting only of the payment terms, a one-paragraph general release, and a denial of liability, all terms

---

settlements are considered public records under North Carolina law. N.C. Gen. Stat. § 132-1.3(a).

4

specifically set forth in the Memorandum of Settlement which would be attached to and incorporated within the final agreement. [See Doc. 24-3]. Additionally, counsel for the Defendants provided a photocopy of the check for the settlement sum in his possession made payable to the Plaintiff and her counsel's law firm. [Id.] On May 1, 2020, after consultation with counsel and with the consent of the Defendants, counsel for the Plaintiff filed a Consent Motion to Extend the Settlement Deadline, stating, "The Plaintiff seeks third-party input about the situation and desires additional time to that this input may be obtained and in the hope that no further extensions will be needed." [Doc. 23 at 2]. The Court granted the requested extension through May 26, 2020. [See Text-Only Order entered May 1, 2020]. The Plaintiff refused to execute the latest version of the agreement and did not respond with any third-party input regarding the revisions. Thus, on May 22, 2020, the Defendants filed the present motion, asking the Court to "enforce the settlement agreed to by the parties." [Doc. 24 at 3]. The Plaintiff opposes the Defendants' motion and moves the Court to set aside the Memorandum of Settlement. [Docs. 29, 33].

    The Court held a hearing on the parties' motions on June 19, 2020.

## II. DISCUSSION

The Court has the inherent authority to enforce a settlement agreement arising from a lawsuit pending before the Court, and the exercise of this authority "has the 'practical effect' of entering a judgment by consent." Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002); Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983); Millner v. Norfolk & W.R. Co., 643 F.2d 1005, 1009 (4th Cir. 1981). In order to enforce a settlement agreement, the Court must: (1) determine that the parties have reached a complete agreement and (2) identify the agreement's terms and conditions. Topiwala v. Wessell, 509 F. App'x 184, 187 (4th Cir. 2013) (per curiam); Hensley, 277 F.3d at 540-41.

The Court finds that the Memorandum of Settlement contains the terms essential to a settlement agreement and is sufficiently complete and definite as to constitute a full and final agreement resolving this litigation. Particularly, the Memorandum of Settlement provides, in pertinent part: (1) that the Defendants will pay the Plaintiff the sum of $39,650.00 within fourteen (14) days of approval of the settlement by the Board of Trustees; (2) that the Plaintiff will execute a general release of all claims in favor of the Defendants; (3) that the parties' settlement agreement would include a denial of liability by the Defendants, a Medicare lien certification, a requirement that

6

Case 1:18-cv-00367-MR-WCM   Document 44   Filed 06/29/20   Page 6 of 15

the settlement terms be kept confidential by the Plaintiff and not publicized by the Defendants, although subject to the Public Records Act; and (4) that the Plaintiff will substitute a letter of resignation dated June 30, 2016 in lieu of a letter of non-renewal of contract. Thus, the contents of the Memorandum of Settlement would lead a reasonable person to believe that this case was settled pursuant to the terms therein. See Topiwala, 509 F. App'x at 186.

The Plaintiff, however, urges the Court to set aside the parties' settlement agreement and to deny the Defendants' motion to enforce. In so doing, the Plaintiff argues that the Memorandum of Settlement contains terms that are ambiguous and "barely legible." [Doc. 33 at 3]. However, it appears that any person, including the Plaintiff, could easily ascertain the terms of the agreement reached by the parties, including the handwritten terms included therein. Moreover, the Plaintiff has failed to establish that any of the material terms set forth in the settlement agreement are ambiguous and therefore unenforceable.

The Plaintiff also argues that certain material terms were left open for negotiation and therefore, the Memorandum of Settlement was not a "complete agreement." The opening statement of the Memorandum of Settlement, however, states that "[t]he parties agree that *all issues* in this litigation are settled and resolved…." [Doc. 24-1 at 2 (emphasis added)].

The Plaintiff appears to object not to the Memorandum of Settlement, but to the language in the subsequent drafts of the release language, which the parties agreed would be drafted by the Defendants' counsel and subsequently executed by the parties. The Plaintiff specifically objects to the inclusion of "the same 'future'/forever type language" that she has consistently objected to in communications with her counsel. [Doc. 33-1 at 21]. However, the general release language proffered by the Defendants (and accepted by the Plaintiff's counsel) does not require the Plaintiff to release any future claims against the Defendant, but rather only those "which Plaintiff *may now have* arising from any acts or omissions of the Defendants from the beginning of time *to the date of this General Release*." [Doc. 24-3 at 5-6 (emphasis added)]. This, however, begs the question of whether the description of the release set out in the Memorandum of Settlement is a sufficient explication of the release terms to constitute a "complete" settlement. The Court finds that it is. A "general release of all claims in favor of the Defendants" is a comprehensive release encompassing all claims, not just the claims specifically articulated and asserted in the Plaintiff's Complaint. It applies to any claims that *could have been asserted* by the Plaintiff, but for whatever reason were not. Such language is necessary to effectuate the parties' agreement that the Plaintiff's claims were to be

8

voluntarily dismissed "with prejudice." [Doc. 24-1 at 2]. A dismissal with prejudice has preclusive res judicata effect in that it bars any other claim that the Plaintiff had at the time against the Defendants that the Plaintiff could have asserted.

The Memorandum of Settlement's reference to the execution of a "general release of all claims" is a common practice in mediated settlement agreements, and its meaning is commonly understood by meditators and lawyers alike. The reference to the preparation and subsequent execution of a general release does not constitute any sort of modification to the terms of settlement reached by the parties in mediation; rather, it is an attempt to effectuate the agreement that had been reached, i.e., a voluntary dismissal of all claims with prejudice. The Plaintiff has not shown any material terms of such release that remained open for negotiation after the execution of the Memorandum of Settlement.[3]

---

[3] In a contradictory fashion, the Plaintiff also complains that the parties' settlement agreement is a valid agreement but that the Defendants have breached such agreement by failing to give her the settlement check as specified in the Memorandum of Settlement. [Doc. 33-1 at 9, 15]. By the plain terms of the parties' agreement, however, the Plaintiff is entitled to such payment only upon the execution of a general release against the Defendants. The Plaintiff therefore undermines her own argument that the Memorandum of Settlement cannot now be enforced, as she still argues that she is entitled to her settlement check under that agreement.

9

The Plaintiff also contends that she was under duress and was coerced by her counsel when she signed the Memorandum of Settlement. [Doc. 33-1 at 30]. Specifically, she claims that her counsel rejected her requests for "ADA accommodations" for her disability, and that she was therefore forced to attend both an extended deposition and a mediation in person with the Defendants. [Id.]. The Plaintiff claims that, by the end of the mediation, she was suffering from "exhaustion" and "weariness from managing a flare-up from her disability." [Id. at 31]. She further submits an affidavit from her husband, stating that Plaintiff's counsel "bullied" and "criticized" the Plaintiff and "continuously pressured" her to sign the settlement agreement. [Doc. 33-4 at 4].

The Plaintiff's claims of duress and coercion, however, are not supported by the record. Mediation, like many aspects of civil litigation, can be stressful. The fact that the Plaintiff was exhausted and weary following a full day of mediation does not render her counsel's performance at that mediation coercive. Further, while the Plaintiff and her husband claim that her counsel bullied and pressured her to sign the settlement agreement following the mediation, the communications from Plaintiff's counsel, when read in an objective, reasonable manner, indicate otherwise. Plaintiff's counsel clearly was attempting to convey legitimate legal advice concerning

the adverse consequences she would face if she did not sign a general release as she was contractually obligated to do under the Memorandum of Settlement.  [See, e.g., Doc. 33-5: Email Communications)].  Providing such advice hardly rises to the level of coercion or duress.

While the Plaintiff now contends that she was coerced and under duress, the fact remains that she, while represented by competent counsel, executed the Memorandum of Settlement, which she herself viewed as a "legally binding agreement" in the weeks that followed the parties' mediation. [See Doc. 33-7 at 3].  That the Plaintiff may now regret having agreed to such a settlement does not serve as a basis for the Court to decline to enforce the parties' agreement.  See Hensley, 277 F.3d at 540 ("having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement") (citation omitted).

The Defendants represent to the Court that no other terms, conditions, issues or considerations were or are material to the parties' agreement, and the Plaintiff has not established that any such material terms were omitted. Moreover, the Memorandum of Settlement itself states that "all issues in this litigation are settled and resolved on the following terms."  [Doc. 24-1 at 2]. Accordingly, the Court finds and concludes that the Memorandum of Settlement contains the terms essential to a settlement agreement and is

11

sufficiently complete and definite as to constitute a full and final agreement resolving this litigation.

The Defendants also seek the imposition of sanctions, in the form of attorneys' fees and costs, against the Plaintiff for her refusal to execute the final settlement agreement in this case. The Court, in its discretion, declines to impose such sanctions.

## III. CONCLUSION

For the reasons stated herein, the Court concludes as a matter of law that the Memorandum of Settlement constitutes an enforceable settlement agreement between the parties to this action. Therefore, the Court by its inherent powers can enter an Order and Judgment to enforce that agreement.

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** as follows:

(1) The Defendants' Motion for Enforcement of Settlement Agreement and Sanctions against Plaintiff [Doc. 24] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent that the parties' agreement as expressed in the Memorandum of Settlement [Doc. 24-1] shall

be and is hereby **ENFORCED**. The Defendant's request for the imposition of sanctions against the Plaintiff is **DENIED**.

(2) The Plaintiff's Motion to Set Aside Memorandum of Settlement [Doc. 29] is **DENIED**.

(3) The Plaintiff Karen K. Jones shall have and recover of the Defendants a Judgment in the amount of Thirty-Nine Thousand Six Hundred Fifty Dollars ($39,650.00). From this Judgment, the Plaintiff shall be responsible for all of her attorneys' fees, costs, and taxes, unless otherwise provided herein.

(4) Upon the payment of the Judgment amount, by operation of this Judgment the Defendants are released and discharged of liability to the Plaintiff for any and all actions, causes of action, claims, demands, liabilities, damages, compensation, costs and expenses, including attorneys' fees (collectively, "Claims"), which the Plaintiff may now have arising from any acts or omissions of the Defendants from the beginning of time to the entry of this Judgment, whether or not the Plaintiff presently knows of such claims, acts or omissions. Such release includes within its scope all legal and equitable Claims. This release does not release rights and obligations created by this Judgment or

the Memorandum of Settlement, and any other claims that cannot lawfully be waived by the Plaintiff.

(5) The actions of the Defendants in reaching the settlement at issue, as well as the entry of this Judgment, shall not be construed as an admission of liability on the part of the Defendants, such liability having been expressly denied. The parties' settlement is in full compromise of a doubtful and disputed claim both as to the question of liability and as to the nature, extent, and existence of any injuries or damages (which injuries or damages the Defendants deny). The payment of the Judgment amount by the Defendants shall not be construed to be an admission of wrongdoing or liability on the part of any Defendant, which liability the Defendants explicitly deny.

(6) All of the Plaintiff's claims asserted in this action not otherwise disposed of by the entry of this Judgment are hereby **DISMISSED WITH PREJUDICE**.

(7) Each party shall bear his/her/its own costs.

**IT IS SO ORDERED.**   Signed: June 29, 2020

Martin Reidinger
Chief United States District Judge

15