FILED
ASHEVILLE, N.C.

JUL 2 4 2020

U.S. DISTRICT COURT
W. DIST. OF N.C.

Hand-Delivered

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

| | |
|---|---|
| KAREN K. JONES, <br><br>      Plaintiff, <br><br>     v. <br><br> TRUSTEES OF ISOTHERMAL COMMUNITY COLLEGE, WALTER DALTON, KIMBERLY GOLD, and STEPHAN MATHENY, <br><br>      Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    CASE NO: 1:18-CV-00367-MR-WMC <br><br> **MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED.R.CIV.P. 60(b), AND STAYING APPEAL DEADLINE PURSUANT TO F.R.C.P RULE 4(a)(4)(A)(vii) AND SUPPORTING MEMORANDUM** |

## I. Motion for Relief from Judgment Pursuant to Fed.R.Civ.P. 60(b)

Pursuant to Fed.R.Civ.P. 60(b), Plaintiff Karen K. Jones, in Pro Se, moves this Honorable Court for an Order granting her relief – Motion for Reconsideration from the Judgment/Order –dated June 29, 2020 (EFC No. 44) granting Defendant's Motion for Enforcement of Settlement Agreement and denying Plaintiff's Motion to Set Aside Memorandum of Settlement and staying appeal period, pursuant to F.R.C.P. Rule 4(a)(4)(A)(vi) pending the duration of the proceedings for this motion in this action before this Honorable Court.

1

## Fed.R.Civ.P Rule 60(b)

As a general matter, the district court is the proper forum in which to bring Rule 60(b) motions for relief from the court's own judgments to determine in the first instance whether there is sufficient basis to overturn the judgments." See *Weisman v. Charles E. Smith Management, Inc.,* 829 F.2d 511, 513-14 (4th Cir. 1987).

FCRP Rule 60(b) provides that the court may relieve a party from a final judgment and sets forth the following six categories of reasons for which such relief may be granted: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly-discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59: (3) fraud, misrepresentation, or misconduct by an adverse party; (4) circumstances under which a judgment is void; (5) circumstances under which a judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable; or (6) any other reason that justifies relief. (F.R.C.P. Rule 60(b) (1)-(b) (1)-(6)). To be entitled to relief, the moving party must establish facts within one of the reasons enumerated in Rule 60(b).

To obtain relief from a judgment under Rule 60(b) , a moving party must first show (1) that the motion is timely, (2) that he has a meritorious claim or defense, and (3) that the opposing party will not suffer unfair prejudice if the

judgment is set aside. See *Nat'l Credit Union Admin Bd v. Gray,* 1 F.3d 262, 264 (4th Cir. 1993). The party must also satisfy one of six enumerated grounds for relief under Rule 60(b). *Id.* at 266.

This, Plaintiff's motion, is being filed less than 30 days from the date of the entry of Judgement/Order dated June 29, 2020. *(ECF No. 44)*. With respect to the time in which such a motion may be brought, Rule 60(b) provides it "shall be made within a reasonable time, and for reasons (1), (2), and (3) and (6), no more than a year after the entry of judgment or order or the date of the proceeding. *F.R.C.P. 60(c)(1)*. Further, Plaintiff files this motion pursuant to F.R.C.P. Rule 4(a)(4)(A)(vi) which states: "If a party files in the district court any of the following motions under the Federal Rules of Civil Procedure—and does so within the time allowed by those rules—the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion. *F.R.C.P. 4(a)(4)(A)(vi)*.

The Courts have held that the party seeking relief from a judgment bears the burden of demonstrating he or she satisfies the prerequisites for such relief and does not give a party the opportunity to re-litigate its case after the court has rendered a decision. See *United States v. Williams,* 674 F.2d at 312-13. However, the Courts have held that motions brought under this rule also required the court to balance the interest in finality of judgements, which "should not lightly be

disturbed," and "the desire to achieve justice." Further, the Court has held that a relief from a judgment is warranted when "substantially different evidence" discovered shows that there was "clear error causing manifest injustice." See *U.S. Tobacco Cooperative, Inc. v. Big South Wholesale of Virginia, LLC,* No. 17-2070_F.3d_, 2018 WL 3677555 (Aug. 3, 2018), and where judgements are obtained "unfairly." *Schultz, supra.,* 24 F.3d at 630.

Rule 60(b)(3) gives district courts the power to relive a party from an adverse judgment because of fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party. The moving party must establish three factors in order to state successful motion: (1) the moving party must have a meritorious claim; (2) the moving party must prove misconduct by clear and convincing evidence, and (3) the misconduct prevented the moving party from fully presenting its case. See *Schultz v. Butcher,* 24 F.3d 626, 630 (4th Cir. 1994)(citing *Square Constr. Co. v. Washington Metro. Area Transit Auth.,* 657 F.2d 68, 71 (4th Cir. 1981).

In this case, Plaintiff argues substantively new evidence found after the entry of judgment; argues the Court erred (made a mistake) as a matter of law ruling the contract valid; and the Courts error of law was due to material misrepresentations made to the Court by Defendants. In limited circumstance, the word "mistake" in Rule 60(b) has been read to include mistakes by the Court. See *Tarkington v.*

4

*United States Lines Co.,* 222 F.2d 358 (2d. Cir. 1955). In this case, Plaintiff asserts that the Court made an error in law based on material misrepresentations made by Defendants at hearing. The Courts have held that it is permissible, in their discretion, for district and/or trial judges to reopen a judgment on basis of an error or law. *FDIC v. Castle,* 781 F.2d 1010, 1104 (5th Cir. 1986)(citation omitted); also *Liberty Mut. Ins. Co. v. EEOC,* 691 F.2d 438, 441 (9th Cir. 1982)(citation omitted); also *Cashner v. Freedom Stores, Inc.,* 98 F.3d 572,578 (10th Cir. 1996); also *Parks v. U.S. Life & Credit Corp.,* 677 F.2d 838, 840 (11th Cir. 1982)(citation omitted). Further, the Second Circuit has held that a motion under Rule 60(b)(1) "[is] available for a district court to correct legal errors by the court," and noting that such relief may not be requested after the time for appeal has elapsed. See *In re 310 Assocs.,* 346 F.3d at 35 (citation omitted); also see *Colucci v. Beth Israel Med. Ctr.,* No. 12-cv-3694, at *2 (2d. Cir. Aug. 27, 2013). Finally, while the Courts are conflicting on whether error of law is permissible under Rule 60(b), the Third Circuit has held, "the precise bounds of this prohibition" is unclear and opened the door to legal error being addressed provided the motion is made before the time for appeal has run. See *James v. Virgin Islands Water and Power Authority,* 119 F. App'x 397, 401 (3d Cir. 2005).

///

///

5

### F.R.C.P. Rule 4(a)(4)(A)(vi)

Pursuant to Federal Rules of Appellate Procedure, Rule 4(a)(4) Effect of a Motion on a Notice of Appeal: "If a party files in the district court any of the following motions under the Federal Rules of Civil Procedure—and does so within the time allowed by those rules—the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." In this case, Plaintiff, files for relief pursuant to Fed.R.Civ.P. 60(b). Thus pursuant to Rule 4(a)(4) (A)(vi): "for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered." *F.R.A.P. Rule 4(a)(4) (A)(vi)*.

### Grounds Alleged

Plaintiff brings this motion based upon her best knowledge, belief, and new evidence that the judgment entered in this action should be re-opened based on (1) misrepresentation of the facts by Defendants at hearing; (2) newly discovered evidence that was not reasonably discoverable or known to Plaintiff at the time of hearing; and (3) judicial mistake of law.

Specifically, the Judge erred as a matter of law in finding that the Memorandum of Settlement (hereinafter "MOS" ) was a valid agreement, in that (1) The Memorandum of Settlement was NEVER signed by Board of Trustee Chairman Roger Jolly; (2) Mr. Jolly was never legally authorized to sign the Memorandum of Settlement because the Board of Trustees violated North Carolina

Open Meeting Law; (3) Defendants' Kim Gold, Stephen Matheny, and Walter Dalton were not authorized to sign the Memorandum of Settlement for the Isothermal Board of Trustee, only as individual Defendants pursuant to state law; (4) Defendants' counsel Matthew Gilley, materially misrepresented to this Court, that Mr. Jolly was legally authorized to sign the Memorandum of Settlement; and (5) Mr. Gilley materially misrepresented to this Court Dr. Gold's, Mr. Matheny's, and Mr. Dalton's "apparent authority" to sign the Memorandum of Settlement on behalf of the Board of Trustee.

### Statement of Case/Statement of Facts

1.     Plaintiff Karen K. Jones (hereinafter "Plaintiff" or "Dr. Jones") filed a Complaint against the Trustees of Isothermal Community College and Walter Dalton, Kimberly Gold, and Stephen Matheny, as individuals, in the General Court of Justice, Superior court Division, County of Rutherford on or about November 21, 2018. (*Ex. A: Complaint*).

2.     Plaintiff's instant complaint alleges in general discrimination based on gender (female), violation/interference of her Family Medical Leave Act (FMLA) rights, failure to accommodate under the Americans with Disabilities Acts (ADA), and violations of the Equal Pay Act (ADA), retaliation, disparate treatment, and a hostile work environment. *(Ex. A).*

3.    Counsel for Defendants filed a motion to remove Plaintiff's instant action to U.S. District Court, Western District of North Carolina, Asheville Division on or about December 12, 2018. *(ECF No. 1).*

4.    Defendants' filed an answer to Plaintiff's instant action in U.S. District Court on January 11, 2019. *(ECF No. 4).*

5.    The Parties participated in discovery, including propounding interrogatories, request for production of documents, request for admissions, and depositions pursuant to the Pretrial Order and Case Management Plan on February 11, 2019. *(ECF No. 9).*

6.    One February 11, 2019, this Court entered a Pretrial Order and Case Management Plan designating Frank Goldsmith as mediator in the case. The Case Management Plan set discovery deadline for November 11, 2019; Motions deadline for December 11, 2019; and Mediation deadline for November 27, 2019. *(ECF No. 9).*

7.    On or about October 27, 2019 the Court entered an order extending deadlines in the Pretrial Order and Case Management Plan to allow Discovery by December 11, 2019; Mediation by December 27, 2019; and Motions by January 10, 2020. *(ECF No. 14).*

8.    On or about November 12, 2019, the Court entered an order extending deadlines in the Pretrial Order and Case Management Plan to allow Discovery by

February 10, 2020; Mediation by February 24, 2020, and Motions by March 3, 2020. *(ECF No. 16).*

9.     On or about February 6, 2020, the Court entered an order extending deadlines for Discovery until February 24, 2020, and the Motions deadline until March 27, 2020 *(ECF No. 18).*

10.     On February 17, 2020, Plaintiff and Defendants (collectively referred to as the "Parties") engaged in mediation, the result of which was the signing of the Memorandum of Settlement ("MOS") by Plaintiff, Plaintiff's counsel, and Defendants' Gold, Matheny, and Dalton, as well as Defendants attorney, Matthew Gilley, all of whom were present during the mediation. The MOS provided that Plaintiff settle and release all claims against Defendants in this instant case in exchange for a settlement amount of $39,650.00, among other terms "within 14 days from approval of this settlement by the Board of Trustees."*(ECF No. 24-1, ¶ 1).*

11.     The MOS states the "settlement is subject to approval by defendants' Board of Trustees, at the next available meeting *(ECF No. 24-1 ¶4).* The Board of Trustees next Board Meeting was on March 24, 2020 *(Ex. B: March 24, 2020 Board of Trustee Minutes).*

12.     Isothermal Board of Trustees Chairman Roger Jolly was present at the February 17, 2019 mediation but did not sign the MOS. *(ECF No. 24-1).*

13.    The Board of Trustee Minutes of March 24, 2020 reflect that the Board of Trustees adjourned into executive session to <u>discuss</u> [emphasis added] this instant action "Karen K. Jones v. Trustees of Isothermal Community College." *(Ex. B)*. The Board of Trustee Minutes further reflect that when the Board of Trustee returned to the public open meeting, they never disclosed nor voted in a public meeting to authorize Chairman Jolly to sign the MOS, any settlement agreement, or any other "subsequent agreement." The Board only returned to the open public meeting and adjourned. *(Ex. B)*.

14.    Further, after the March 24, 2020 Isothermal Board of Trustees Meeting, Chairman Roger Jolly never signed the MOS and <u>has never</u>[emphasis added] signed the MOS.*(ECF No. 24-1)*.

15.    Defendants' counsel Matthew Gilley admit during hearing on June 19, 2020 that Chairman Jolly never signed the MOS *(Ex. C: Transcript of the June 19, 2020 Motions Hearing; also ECF No. 45)*.

16.    In the months following the February 17, 2020, Defendants attempted to get Plaintiff to sign a "subsequent Settlement Agreement reflecting the terms agreed to Memorandum of Settlement" *(ECF No. 24 at ¶ 3)*.

17.    The MOS specifically does not call for a "subsequent agreement" only a "general release of all claims" and that the "parties shall execute a final dismissal

with prejudice upon Plaintiff's receipt of the settlement proceeds." *(ECF No. 24-1, ¶2).*

18.     Plaintiff refused to sign the subsequent agreement because she <u>did not [emphasis added]</u> agree to a subsequent agreement and because she was disputing material terms contained within the MOS that she did not agree to and for which there was clearly no meeting of the minds. Plaintiff asserted over months that she did not agree in mediation to execute a "subsequent agreement" only a general release and a dismissal of the case. *(ECF No. 24-1 ¶2).* Plaintiff further refused to sign the "subsequent agreement" titled "CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE IN FULL" which was far more encompassing than a standard general release, contained provisions and/or terms asking Plaintiff to waive her rights to possible other claims under other laws not subject to disposition and adjudication in this instant action.  In all the Parties exchanged more than a dozen versions of the "subsequent agreement" titled various things. *(Ex. D: Versions of the general release).* The MOS provided no deadline for execution of the general release and Plaintiff believed that the general release would be part of the dismissal as explained to her by the mediator.

19.     Unable to reach an agreement, Defendants filed a Motion to Enforce Settlement Agreement and Supporting Memorandum of Law on or about May 22, 2020. *(ECF Nos. 24 and 25).* Plaintiff filed a Response to Defendants' Motion to

Enforce on or about June 5, 2020. *(ECF No. 33)*. Defendants filed a Reply to Plaintiff's Response to Defendants' Motion to Enforce on or about June 15, 2020. *(ECF No. 40)*.

20.     Plaintiff filed a Motion to Set Aside the Memorandum of Settlement and Supporting Memorandum of Law on or about May 26, 2020. *(ECF Nos. 29 and 30)*. Defendants filed a Response to Plaintiff's Motion to Set Aside on or about June 12, 2020. *(ECF No. 39)*.

21.     On June 19, 2020, this Honorable Court held a hearing on Defendants' Motion to Enforce and Plaintiffs' Motion to Set Aside *(Ex. C: Hearing Transcript)*.

22.     On June 29, 2020, the Court entered an Order and Judgment granting Defendants' Motion to Enforce and denying Plaintiff's Motion to Set Aside. *(ECF No. 44)*.

## II.     The Memorandum of Settlement Is Not A Valid Contract

### The MOS is not signed by all parties

The court erred in finding that the Memorandum of Settlement is a valid contract as the (settlement agreement) contract was not signed by all parties. On February 17, 2020, Plaintiff and Defendants (collectively referred to as the "Parties") engaged in mediation, the result of which was the signing of the Memorandum of Settlement ("MOS") by Plaintiff, Plaintiff's counsel, and

12

Defendants' Gold, Matheny, and Dalton, as well as Defendants attorney, Matthew Gilley. Isothermal Board of Trustees Chairman Roger Jolly was present at the February 17, 2020 mediation but did not sign MOS. *(ECF No. 24-2)* and has never signed the MOS of February 17, 2020.

The MOS provided that Plaintiff settle and release all claims in this instant action against Defendants in exchange for a settlement amount of $39,650.00, among other terms "within 14 days from approval of this settlement by the Board of Trustees."(ECF No. 24-1, ¶ 1). The MOS states the "settlement is subject to approval by Defendants' Board of Trustees, at the next available meeting *(ECF No. 24-1, ¶4).* The Board of Trustees' next Board Meeting was on March 24, 2020 *(Ex. B: March 24, 2020 Board of Trustee Minutes).*

A settlement agreement is subject to the general principles of contract law and North Carolina Rules for Mediated Settlement Conferences and Other Settlement Procedures in Superior Court Civil Actions. See *Woodmen of the World Life Ins. Soc. v. Kight,* 246 Neb. 619, 522 N.W.2d 155 (1994); also *Heese Produce Co. v. Lueders,* 233 Neb. 12, 443 N.W.2d 278 (1989). When considering whether a contract is valid Courts must apply standard contract principles. The Courts have held disputes concerning a settlement agreement are governed by applicable state contract law, whether the underlying claim is state or federal. *Kilstaf, Inc. v. CVS Caremark Corp.,* 669 F.3d 1005, 1017 (9th Cir. 2012); also, *Dillard v. Starcon*

*Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (settlement of federal claim enforced "just like any other contract").

The general principals of contract law applies here to court settlement agreements in that there must be an offer, acceptance, exchange of some consideration, and the agreement must be signed by all Parties. Further, the contract must be signed by all Parties "authorized" to enter into the contract. The Courts have that "No contract exists until" at which time the contract is signed by all parties. See *Parker v. Glosson,* 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007). Likewise, the Courts have held when negotiating parties make it clear that they do not intend to be bound by a contract until a formal written agreement is executed, no contract exists until that time. *Hilliard v. Thompson*, 81 N.C. App. 404, 409, 344 S.E.2d 589, 592 (1986).

In *Hillard,* the Courts stated: "The reason for holding the instrument void is that it was intended that all the parties should execute it and that each executes it on the implied condition that it is to be executed by the others, and, therefore, that <u>until executed by all it is inchoate and incomplete and never takes effect as a valid contract,</u> and <u>this is especially true where the agreement expressly provides or its manifest intent is, that it is not to be binding until signed.</u>" *Hillard, supra. At *234.* The Court in *Parker,* the Court states: "In reaching this result, we take the work "execute" to mean "sign," which is a familiar usage of this term at law and

14

which is the apparent meaning of the work in context." *Parker, supra.;* also *Harris v. Latta*, 298 N.C. 555, 558, 259 S.E.2d 239, 241 (1979) ("In construing contracts ordinary words are given their ordinary meaning unless it is apparent that the words were used in a special sense."). Further, as stated in *Skinner v. Haugseth*, 426 So. 2d 1127, 1130 (Fla. App. 1983): "In the final analysis, the question almost always seems to turn upon whether the signing party manifested the intent not to be bound by the contract unless all of the other parties joined in its execution." And, as stated in *Bank of United States v. Chemical Bank & Trust Co.*, 140 Misc. 394, 396, 246 N.Y.S. [**592] 595, 598 (Sup. Ct. 1930): "When the intent is manifested that the contract is to be executed by others than those who actually signed it, it is inchoate and incomplete and does not take effect as a binding contract unless executed by all parties."

During the hearing, Mr. Gilley argues that Mr. Jolly was the only party authorized by the Board to sign the settlement on behalf of the Board. Then, in contradiction, he tries to argue the Doctrine of Apparent Authority as it applies to Dr. Gold, Mr. Matheny, and Mr. Dalton in signing the MOS on behalf of the Board in their capacities as President and Vice President, respectively. Mr. Gilley cannot have it both ways. The Doctrine of Apparent Authority does not apply here to Dr. Gold, Mr. Matheny, and Mr. Dalton, as they are not authorized under state law, nor

15

their college contracts, nor the college bylaws to settle any such lawsuit without "express consent" of the Board of Trustees.

Defendants' attorney, Matthew Gilley admits during the June 19, 2020 hearing that Mr. Jolly did not sign the MOS, has never signed the MOS, and that no one else had the authority to sign on behalf of the Board of Trustees.

> THE COURT:  Well but that goes -- we've come full circle to my earlier question.  The declaration of Mr. Jolly doesn't quite say that.  It says that he's granted the authority to sign a settlement agreement on the board's behalf.  That is in keeping with the terms stated in the Memorandum of Settlement completed at the mediation.  That's not approving the prior agreement, is it?  Or is it?
>
> MR. GILLEY:  Well I think that's splitting some hairs there, Your Honor.  Because *if the problem that the plaintiff sees with the Memorandum of Settlement is that it does not include a signature from anyone from the board of trustees then **Mr. Jolly could sign this document right now to remedy that issue.**  So that, I believe, is a -- is not -- does not go to the -- does not impair the enforceability of the agreement.*

>                                   ECF No. 45; Ex. D: T 38:23-25, 39-2:10

Mr. Gilley later admits during hearing that Mr. Jolley did not sign the MOS but only signed a two-page "general release" dated April 29, 2020. However, that alleged "general release" signed by Mr. Jolly allegedly on April 28, 2020 is nowhere in the Court record, nor to Plaintiff's knowledge was it signed by Dr. Gold, Mr. Matheny, and Mr. Dalton, as individual Defendants or employees of the College. And, it certainly was not signed by Plaintiff.

Gilley, specifically told the Court:

16

GILLEY: … As a matter of fact, when I sent our last-ditch attempt to finally get all of this settled, we had -- and we had attached this to our motion. Your Honor, we had put together a two-page document titled "General Release" which I think still breaks the record for shortest settlement agreement I've ever penned in my career.

**Mr. Jolly's signature appears on that document. I have two copies of that document here today, along with the check for the settlement amount. As a matter of fact, you know, this could be resolved just with a signature.**

THE COURT: I need to back you up a little bit as to one thing that you said earlier because my question for you was whether the board of trustees had approved the February 17th agreement. And the language in the declaration of Mr. Jolly is the board granted me authority to sign a settlement agreement on the board's behalf. That is in keeping with the terms stated in the Memorandum of Settlement completed at the mediation. It doesn't expressly say that the board has approved the February 17th agreement, does it?

MR. GILLEY: It doesn't say those words in this declaration, Your Honor, however, there was a meeting of the board at which they were presented with the Memorandum of Settlement and agreed that this -- that this could go forward on those terms.

THE COURT: Where is that in the record?

MR. GILLEY: Right now, Your Honor, we have the declaration of Mr. Jolly in there to reflect that action.

THE COURT: Well but that goes -- we've come full circle to my earlier question. The declaration of Mr. Jolly doesn't quite say that. It says that he's granted the authority to sign a settlement agreement on the board's behalf. That is in keeping with the terms stated in the Memorandum of Settlement completed at the mediation. That's not approving the prior agreement, is it? Or is it?

MR. GILLEY: Well I think that's splitting some hairs there, Your Honor. Because if the problem that the plaintiff sees with the Memorandum of Settlement is that it does not include a signature from anyone from the board of trustees then Mr. Jolly could sign this document right now to remedy that issue. So that, I believe, is a -- is not -- does not go to the -- does not impair the enforceability of the agreement.

17

Furthermore, just looking at the agreement and applying general concepts of apparent authority, signatures on the agreement include the current president of the -- of Isothermal Community College, Walter Dalton, and the Vice President of Administrative Affairs. Steven Matheny.

THE COURT: It doesn't say anything about signing in the capacity as such president or vice president. It's in their individual capacity, isn't it? Because they're individuals; right?

MR. GILLEY: They are individual defendants, yes, but they do also hold those positions with the college.

THE COURT: Right. But, as you know, how you sign, the manner in which you sign, it's indicative of the authority with which you sign. And if all you do is sign your name that's not indicative of signing as the president of a company or the chairman of the board of trustees or anything else; right?

ECF No. 45 T:37:19-25, 38:1-25, 39:1-25; 40:1-6

## Isothermal Board of Trustee violated North Carolina Open Meeting Law

As to the Board of Trustees granting Mr. Jolly, President of the Board, to sign the settlement on behalf of the Board, Plaintiff argues the Board violated North Carolina Open Meeting Law. The Minutes of the March 24, 2020 Board of Trustees Meeting clearly reflect the Board adjourned into closed session to discuss the settlement in the above instant action, but when the Board re-adjourned in the open public meeting, they did not properly and legally disclose the action or authorization that took place in closed session as required under North Carolina Open Meeting Law. Nowhere in the Board minutes, as required by law, reflect that the Board authorized Mr. Jolly, as Board President, to sign the settlement

agreement on behalf of the Board pursuant to *N.C. Gen. Stat. 143-138(a)(3)*. See

*N.C. Gen. Stat. 143-138(a)(3); also Ex. E: March 24, 2020 Board Minutes.*

North Carolina Open Meeting Law *N.C.R.S § 143-138* as well as precedent

case law clearly states that any action of a public board from closed session must

either disclose or vote in the open public meeting or any action taken is not legal or

legally valid or binding.

The North Carolina Supreme Court has held: minutes "should contain

mainly a record of what was done at the meeting" and their purpose is "to reflect

matters such as motions made, the movant, points of order, and appeals, not to

show discussion or absence of action." *Maready v. City of Winston-Salem,* 342

N.C. 708, 733, 467 S.E.2d 615, 631 (1996) (citing Henry M. Robert, Robert's

Rules of Order Newly Revised § 47, at 458 (9th ed. 1990)).

In *Maready*, the N.C. Supreme Court also held, minutes should also include

any information needed to demonstrate that the actions taken by the body were

legally valid. While the *Maready* case held that there was no legal requirement for

minutes to contain a summary of what was discussed at the meeting or in closed

session, but at the least a "general account" of closed sessions. The Court described

the general account as a narrative that describes in general terms the discussion that

takes place so that there is some record of the meeting even if no official action is

taken, stating that state statute requires the general accounts to be prepared such

that "a person not in attendance would have a reasonable understanding of what transpired." While minutes and general accounts document two separate types of information, they may certainly be combined into a single document.

Thus, Plaintiff argues not only did Mr. Jolly never sign the MOS, he was never legally authorized to sign the MOS.

The overriding intent behind the North Carolina Open Meetings Law is that public bodies should act in open session because they serve the public-at-large. N.C. Gen. Stat. § 143-318.9-10 (2005). A board may act only as a body and only in a meeting. See H.B.S. Contractors v. Cumberland County Bd. of Education, 122 N.C. App. 49, 55, 468 S.E.2d 517, 522 (emphasis and citation omitted), review improv. allowed, 345 N.C. 178, 477 S.E.2d 926 (1996); N.C. Gen. Stat. §§ 143-318.9-10 (2005). A Board may act only as a body and only in  meeting. See O'Neal v. Wake County, 196 N.C. 184, 187, 145 S.E. 28, 29 (1928).

The intent of North Carolina Open Meeting Law, as and for closed session, is for public governing bodies to receive advice and discuss matters:

> (1)To prevent the disclosure of information that is privileged or confidential pursuant to the laws of this State or of the United States, or not considered a public record within the meaning of Chapter 132 of the General Statutes; and (3) To consult with an attorney employed or retained by the public body to preserve the attorney-client privilege between the attorney and the public body, which privilege is hereby acknowledged. The public body may consider and give instructions to an attorney concerning the handling or settlement of a claim, judicial action, mediation, arbitration, or

20

administrative procedure. **If the public body has approved or considered a settlement, other than a malpractice settlement by or on behalf of a hospital, in closed session, the terms of that settlement shall be reported to the public body and entered into its minutes as soon as possible within a reasonable time after the settlement is concluded.**

*N.C. Gen. Stat. 143-318.11(a)(3)*

Nothing in North Carolina Open Meeting Law authorizes public bodies to withhold any approval of a settlement or authorization to approve a settlement, from the general public, "approved or considered" in closed session. While *N.C. Gen. Stat. 143-318.11(a)(3)* authorizes the board to "consider and give instructions to an attorney" concerning anticipated or pending litigation. This could include authorization to agree to the final terms of a settlement agreement on behalf of the unit. The statute also <u>requires</u>[emphasis added] must readjourn into open public session, state that they have discussed the matter, and put into the minutes of the meeting, in general what they authorized, "as soon as possible withing a reasonable time after the settlement is concluded." See *Times News Publishing Company v. Alamance-Burlington Board of Education,* 242 N.C. App. 375 (2015); also *N.C. Gen. Stat. § 143.318.11(a)(3).*

In this case, the terms of the proposed settlement were agreed in the February 17, 2020 mediation. If, as Mr. Gilley argued to the Court during the June 19, 2020 motion hearing, that the Board authorized Mr. Jolly on March 24, 2020, to sign the settlement, the Board should have entered into the record of the open

21

public meeting the terms of the settlement agreement on March 24, 2020. Neither the public meeting minutes of March 24, 2020, nor any subsequent minutes of the Board indicate any such authorization. *Exs. B and E.* The authorization given to Jolly and the terms of the settlement, by law, should have been entered into the public meeting minutes on March 24, 2020 because the settlement terms were penned on February 17, 2020. Nor do the Board Minutes of April 9, 2020, or June 9, 2020, respectively, show the Board ever reported any action in open meeting or by approval of closed session minutes *Ex. B and E at pp. 1-2, 7-8.* Further, none of the Board minutes since March 24, 2020, until present reflect that Dr. Gold, Mr. Matheny, or Mr. Dalton were given any authority to sign the MOS on behalf of the college. *Ex. B and E at pp. 1-8.* Finally, prior Board Minutes of September 24, 2019, and the January 29, 2019, respectively, show the Board following state open meeting law as to other closed/executive session actions, specifically announcing what actions were taken in closed session after returning to the open public meeting before adjourning. *Ex. E at pp. 16, 19.* Ultimately, the Board Minutes from March 24, 2020 to present do not even reflect that the Board approved minutes from its closed meeting, thus violating open meeting law.

The North Carolina Supreme Court held in *Maready* that any vote/action taken in closed/executive session not properly announced and recorded in the minutes of the open public meeting are not legal and any actions under that illegal

action are invalid. Maready, *supra.* Further, in *Maready,* a landmark decision, the Court held that preliminary decisions and/or consensuses made in closed session have no legally binding affect until they come up for a legally binding action.

The Courts have further held that the purpose of meeting minutes is to provide an official record, or proof, of action. <u>In a judicial proceeding, the minutes are the only competent evidence of action, and as such, they may not be attacked on the grounds that they are incorrect. Since public bodies have limited authority to act in closed sessions, minutes of closed sessions can be quite skeletal. For closed sessions, the open meeting law required, in addition to minutes, a general account of the closed session. The statute requires that the general account be detailed enough "so that a person not in attendance would have a reasonable understanding of what transpired."</u> *N.C. Gen. Stat. 143-318.10(e);* also see *Multimedia Publishing Co. of N.C., Inc. v. Henderson County,* 145 N.C. App. 365 (2001).

Further, the language of N.C. Gen. Stat. 143-138.11(a)(3) only authorizes the board to "consider and give instructions to an <u>attorney</u>" [emphasis] added concerning anticipated or pending litigation. This could include authorization to agree to the final terms of a settlement agreement on behalf of the unit. No where in this exception allowing action in a closed session does it authorize the Board to authorize the board president or any other person other than an attorney to act on

behalf of the "unit," in this case the Isothermal Board. *N.C. Gen. Stat. 143-138-11(a)(3).*

Mr. Gilley, further misleads this Honorable Court by stating, that Mr. Jolly signed the "two-page general release." Specifically, Mr. Gilley tells the Court:

> GILLEY: I don't know how much background Your Honor wants me to go into here but Isothermal Community College under that name is not a proper general entity. The proper general entity is the Trustees of Isothermal Community College. And the trustees, just as any other constituent body, does not act through the act of one person. They have to act as a group. So Mr. Jolly has been given that authority.
>
> As a matter of fact, when I sent our last-ditch attempt to finally get all of this settled, we had -- and we had attached this to our motion. Your Honor, we had put together a two-page document titled "General Release" which I think still breaks the record for shortest settlement agreement I've ever penned in my career.
>
> <u>Mr. Jolly's signature appears on that document. I have filed with the Court.</u>

Mr. Gilley states to the Court he has a document signed by Mr. Jolly dated April 29, 2020 (ECF No. 45 T:40:23-25, 41:1-3); however, nowhere in the Court record is the "general release" signed by Mr. Jolly on April 29, 2020. The only "general release" filed with the Court by Mr. Gilley on behalf of the Defendants is the two-page general release not signed by any party. ECF No. 24-3 at p. 6. Even if Mr. Jolly had signed the "general release" on April 29, 2020 as stated by Mr. Gilley, the Board of Trustee was required to acknowledge acceptance and/or signing of the settlement at a subsequent Board meeting, in closed session, and

then announced the action and the terms of the settlement during the open meeting for recording in the public meeting minutes pursuant to *N.C. Rev. Stat. § 143-138.11(a)(3).* The Board minutes of June 9, 2020, the only board meeting held following, April 29, 2020, shows no such legally required action was ever taken by the Board of Trustees. *Ex. E at pp. 1-2.*

During the June 19, 2020 motion hearing, the Court even questions whether the Board authorized Mr. Jolly to sign the February 17, 2020 Memorandum of Settlement:

> THE COURT: I need to back you up a little bit as to one thing that you said earlier because my question for you was whether the board of trustees had approved the February 17th agreement. And the language in the declaration of Mr. Jolly is the board granted me authority to sign a settlement agreement on the board's behalf. That is in keeping with the terms stated in the Memorandum of Settlement completed at the mediation. It doesn't expressly say that the board has approved the February 17th agreement, does it?
>
> MR. GILLEY: It doesn't say those words in this declaration, Your Honor, however, there was a meeting of the board at which they were presented with the Memorandum of Settlement and agreed that this -- that this could go forward on those terms.
>
> THE COURT: Where is that in the record?
>
> MR. GILLEY: Right now, Your Honor, we have the declaration of Mr. Jolly in there to reflect that action.
>
> THE COURT: Well but that goes -- we've come full circle to my earlier question. The declaration of Mr. Jolly doesn't quite say that. It says that he's granted the authority to sign a settlement agreement on the board's behalf. That is in keeping with the terms stated in the

Memorandum of Settlement completed at the mediation. That's not approving the prior agreement, is it? Or is it?

MR. GILLEY: Well I think that's splitting some hairs there, Your Honor. Because if the problem that the plaintiff sees with the Memorandum of Settlement is that it does not include a signature from anyone from the board of trustees then **Mr. Jolly could sign this document right now to remedy that issue.** So that, I believe, is a -- is not -- does not go to the -- does not impair the enforceability of the agreement.

Finally, Mr. Gilley further misleads the Court and erroneously argues that Dr. Gold, former Executive Vice President of Isothermal Community College, Walter Dalton, President of Isothermal; and Stephen Matheny, Vice President of Administrative Affairs, have "apparent authority" to sign on behalf of the college, not just as individual defendants.

GILLEY: Furthermore, just looking at the agreement and applying general concepts of apparent authority, signatures on the agreement include the current president of the -- of Isothermal Community College, Walter Dalton, and the Vice President of Administrative Affairs. Steven Matheny.

THE COURT: It doesn't say anything about signing in the capacity as such president or vice president. It's in their individual capacity, isn't it? Because they're individuals; right?

MR. GILLEY: They are individual defendants, yes, but they do also hold those positions with the college.

THE COURT: Right. But, as you know, how you sign, the manner in which you sign, it's indicative of the authority with which you sign. And if all you do is sign your name that's not indicative of signing as the president of a company or the chairman of the board of trustees or anything else; right?

26

MR. GILLEY: Even with all of that, Your Honor, I think with the document we have that the Memorandum of Settlement, to bring everything back to U.S.A. Trouser and the cases within the circuit regarding the enforcement of settlement agreements, that what we have here is certainly sufficient to determine that the parties have reached a complete agreement here. Furthermore, the document identifies the agreement's terms and conditions. So even with that issue about who signed or who didn't, this document certainly meets the standards laid out in U.S.A. Trouser and in the relevant --

THE COURT: How can it be sufficient if not all the signatures are on the document? If you don't have the actual approval of one out of the four defendants, how is it a sufficiently complete agreement?

MR. GILLEY: Well, Your Honor, again, I point back to the declaration of Mr. Jolly stating that they are prepared to move forward, and his actual signature on this general release of -- <u>dated April 29th which states that this general release would incorporate the terms of the Memorandum of Settlement as fully set forth therein.</u>

ECF No. 45 T:38:4-25; 39:1-25, 40:1-2, 41:1-3

Mr. Gilley is again disingenuous in the above statement when he states: "I point back to the declaration of Mr. Jolly stating that they are prepared to move forward, and his actual signature on this general release of -- dated April 29th which states that this general release would incorporate the terms of the Memorandum of Settlement as fully set forth therein." Mr. Jolly's sworn declaration only states: "The Board granted me authority to sign a settlement agreement on the Board's behalf that is in keeping with the terms stated in the Memorandum of Settlement completed at the mediation." Plaintiff argues asserts that the Board's authorization for Mr. Jolly to sign the settlement was not legal

27

under North Carolina Open Meeting Law, if authorized, Mr. Jolly was bound to sign the same MOS signed by Plaintiff, Plaintiff's attorney, Dr. Gold, Mr. Matheny, Mr. Dalton, and Defendants' attorneys (not a separate "general release").

Nowhere in the Isothermal Learning College Manual, which include the Administrative Framework for the College, including Governance of the College and the Authority of the Board of Trustees and the Authority of the President as well as the college Bylaws, are the President, and any Vice President, authorized to sign any legal settlement agreement on behalf of the Board of Trustees. *Ex. F: Learning College Manual, in its relevant parts.* Specifically, Section 3-6 of the College Bylaws: (i) The President shall discharge any other functions that the Board may delegate to him/her." *Ex. F at p. 10.* Further, the Bylaws state: the president shall carry out "all actions of the Board of Trustees, not in conflict with the General Statutes or State Board of Community Colleges regulations, shall be binding on the President, and it shall be the President's duty to carry out all rules and regulations of the Board. *Ex. F at p. 10.* Further, Policy No. 201-03-00BP: Duties and Authority of President states in its relevant part, "The President is charged by the Board with full responsibility and authority of the operation of the college pursuant to state and federal statutes, policies, rules, and regulations, and the policies of the Board of Trustees." *Ex. F at p. 21.*

Defendants further disingenuously misled the Court about "the apparent authority" of Dr. Gold, Mr. Matheny, and Mr. Dalton, to sign the MOS as Isothermal representatives, not just individual defendants. Nothing in state law, or the college Bylaws, expressly or impliedly grants such apparent authority of these college employees.

Mr. Gilley, in fact, contradicts his own argument, when he tells this Honorable Court that Mr. Jolly, nor anyone else, can authorize this settlement other than the Board of Trustees. Specifically, Mr. Gilley states to the Court:

> GILLEY: … I don't know how much background Your Honor wants me to go into here but Isothermal Community College under that name is not a proper general entity. <u>The proper general entity is the Trustees of Isothermal Community College. And the trustees, just as any other constituent body, does not act through the act of one person. They have to act as a group. So Mr. Jolly has been given that authority.</u>

ECF No. 45 T:37:11-18

Notwithstanding this statement of Mr. Gilley, Plaintiff asserts, that even Mr. Jolly was not legally granted the authority to sign the MOS due to violations of North Carolina Open Meeting Law, *N.C. Gen. Stat. 143-138*, as stated above.

Finally, pursuant to the North Carolina Rules for Mediated Settlement Conferences and Other Settlement Procedures in Superior Court Civil Actions, "*Consistent with N.C.G.S. § 7A-38.1(l), if a settlement is reached during a mediated settlement conference, then the mediator shall ensure that the terms of the settlement are reduced to writing and signed by[all] the parties and their*

*attorneys before ending the conference. No settlement shall be enforceable unless*

*it has been reduced to writing and signed by the parties.*" *Ex. G: North Carolina*

*Rules for Mediated Settlement Conferences and Other Settlement Procedures in*

*Superior Court Civil Actions at p. 14 (Rule 4(a)(3)(c)(1).*

Further, the Rules of Mediated Settlements states:

> Any party that is a governmental entity shall be represented at the mediated settlement conference by an employee or agent who is not the entity's outside counsel and who: (i) has authority to decide on behalf of the entity whether and on what terms to settle the action; (ii) has been authorized to negotiate on behalf of the entity and can promptly communicate during the conference with persons who have decision-making authority to settle the action; or (iii) has authority to negotiate on behalf of the entity and to make a recommendation to the entity's governing board, if under applicable law the proposed settlement terms can be approved only by the entity's governing board. *Ex. G at p. 12 (Rule 4(a)(1)(a)(3).*

## III.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Honorable

Court grant Plaintiff relief requested in relief from the Order and Judgment of June

19, 2020 and restore this instant matter back to the appropriate status as if no Order

and Judgment had been issued.


DATED this 24th day of July, 2020          Respectfully submitted,

Karen K. Jones, Plaintiff In Pro Se
201 Fairforest Drive
Rutherfordton, NC 28139
(828) 429-0179 / kikjones@me.com

30

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 24, 2020, she filed the foregoing MOTION FOR RELIEF FROM ORDER AND JUDGMENT on the following Parties, in the following manner:

## VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED:

Matthew J. Gilley, Attorney for Defendants
100 Dunbar Street, Suite 300,
Spartanburg, SC 29306.

_Karen K. Jones_
Karen K. Jones, Plaintiff In Pro Se

Email:
Mike Thomas, Attorney
Patrick Harper Dixon
mthomas@phd-law.com