THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00367-MR-WCM

| | |
|---|---|
| **KAREN K. JONES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **O R D E R** |
| ) | |
| **TRUSTEES OF ISOTHERMAL** ) | |
| **COMMUNITY COLLEGE, WALTER** ) | |
| **DALTON, KIMBERLY GOLD, and** ) | |
| **STEPHEN MATHENY,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's *pro se* "Motion for Relief from Judgment Pursuant to F.R.C.P. 60(b), and Staying Appeal Deadline Pursuant to F.R.C.P 4(a)(4)(A)(vii)."[1]  [Doc. 46].

**I.     BACKGROUND**

In November 2018, the Plaintiff Karen K. Jones brought this action in the Superior Court of Rutherford County against the Defendants Trustees of Isothermal Community College ("Board of Trustees"), Walter Dalton

---

[1] Although the title of the Plaintiff's Motion cites to Federal Rule of Civil Procedure 4(a)(4)(A)(vii), it appears that the Plaintiff is referring to the Federal Rules of Appellate Procedure because Federal Rule of Civil Procedure 4(a)(4)(A)(vii) does not exist.

("Dalton"), Kimberly Gold ("Gold"), and Stephen Matheny ("Matheny") (collectively, "the Defendants"), asserting claims under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*; the Equal Pay Act, 29 U.S.C. § 201, *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*; the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-240, *et seq.*; the North Carolina Whistleblower Protection Act, N.C. Gen. Stat. § 126-84, *et seq.*; and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et seq.* [Doc. 1-1 at 6-15]. The Defendants removed the action to this Court in December 2018. [Doc. 1]. Thereafter, a Pretrial Order and Case Management Plan was entered, setting this matter for trial in May 2020. [Doc. 9].

On February 17, 2020, the parties met for a mediated settlement conference with mediator Frank Goldsmith. At the mediation, the parties executed a Memorandum of Settlement.[2] [Doc. 24-1]. On February 19, 2020, the mediator filed a mediation report with the Court advising that the parties had reached agreement on all issues, and that the settlement would

---

[2] The Memorandum of Settlement was signed by the Plaintiff, her counsel, the Defendants' counsel, and Defendants Dalton, Gold, and Metheny. The Memorandum stipulated that the parties' settlement was "subject to approval by defendant Board of Trustees, at [its] next available meeting." [Doc. 24-1 at 2].

be presented to the Board of Trustees at their next available meeting, which was scheduled to occur on March 24, 2020.[3] [Doc. 19]. By text order entered on February 20, 2020, the Court took notice of the parties' settlement and directed that a stipulation of dismissal was be filed within forty-five (45) days, placing the deadline at April 6, 2020.

On March 24, 2020, the Board of Trustees considered the settlement terms and granted Board Chair Roger Jolly authority to execute a Settlement Agreement consistent with the terms of the Memorandum of Settlement. [Doc. 24-2: Jolly Dec. at ¶ 1].

Counsel for the Defendants, Matthew J. Gilley, and counsel for the Plaintiff, Michael P. Thomas, engaged in correspondence by email over the following two-and-a-half months, through which they tried to produce a Settlement Agreement consistent with the Memorandum of Settlement that would be acceptable to the Plaintiff. The Defendants presented at least three drafts of such an agreement, each one shorter and more simplified than the preceding draft. On each occasion, the Plaintiff refused to agree to any agreement that included a general release of claims against the Defendants

---

[3] As a public body subject to North Carolina open records statute, the Board of Trustees acts as a body during properly called meetings, during which it may receive legal advice in closed session as to the settlement of legal matters. N.C. Gen. Stat. § 143-318.11(a)(3). Such settlements are considered public records under North Carolina law. N.C. Gen. Stat. § 132-1.3(a).

despite the Memorandum of Settlement calling for a general release. [Doc. 24-1 at 2].

On April 29, 2020, counsel for the Defendants sent the Plaintiff's counsel a two-page settlement agreement consisting only of the payment terms, a one-paragraph general release, and a denial of liability, all terms specifically set forth in the Memorandum of Settlement which would be attached to and incorporated within the final agreement. [See Doc. 24-3]. Additionally, counsel for the Defendants provided a photocopy of the check for the settlement sum in his possession made payable to the Plaintiff and her counsel's law firm. [Id.]. On May 1, 2020, after consultation with counsel and with the consent of the Defendants, counsel for the Plaintiff filed a Consent Motion to Extend the Settlement Deadline, stating, "[t]he Plaintiff seeks third-party input about the situation and desires additional time so that this input may be obtained and in the hope that no further extensions will be needed." [Doc. 23 at 2]. The Court granted the requested extension through May 26, 2020. [See Text-Only Order entered May 1, 2020]. The Plaintiff refused to execute the latest version of the agreement and did not respond with any third-party input regarding the revisions. Thus, on May 22, 2020, the Defendants filed a Motion for Enforcement of Settlement Agreement and Sanctions against Plaintiff, asking the Court to "enforce the settlement

4

agreed to by the parties." [Doc. 24 at 3]. The Plaintiff opposed the Defendants' motion and moved the Court to set aside the Memorandum of Settlement. [Docs. 29, 33].

The Court held a hearing on the parties' motions on June 19, 2020. On June 29, 2020, the Court entered an Order granting the Defendants' Motion for Enforcement of Settlement Agreement and denying the Plaintiff's motion. [Doc. 44].

On July 24, 2020, the Plaintiff filed the present "Motion for Relief from Judgment Pursuant to F.R.C.P. 60(b), and Staying Appeal Deadline Pursuant to F.R.C.P 4(a)(4)(A)(vii). [Doc. 46].[4] In her Motion, the Plaintiff seeks relief from the Court's June 29 Order on the grounds that the Defendants made misrepresentations at the hearing, she has newly discovered evidence, and the Court made errors of law. [Id.]. On August 14, 2020, the Defendants responded. [Doc. 51]. On August 20, 2002, the Plaintiff replied. [Doc. 52].

## II. STANDARDS OF REVIEW

Notwithstanding the Plaintiff's citation to Rule 60(b), the Court construes the Plaintiff's Motion as arising under both Rule 60(b) and Rule

---

[4] While the Court's Local Civil Rules ("LCvR") specify that "the page limit for any brief is 25 pages," the Plaintiff's Motion is 30 pages. LCvR 7.1(d). In the interest of resolving this matter expediently, the Court will consider the Plaintiff's noncompliant Motion.

5

59(e) because it was filed within twenty-eight days of the entry of the Order. See Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 412 (4th Cir. 2010); MLC Automotive, LLC v. Town of Southern Pines, 532 F.3d 269, 277 (4th Cir. 2008) (citing Dove v. CODESCO, 569 F.2d 807, 809 (4th Cir. 1978)) (holding that "if a post-judgment motion is filed within [twenty-eight] days of the entry of judgment and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled").

Rule 59(e) of the Federal Rules of Civil Procedure provides that a judgment may be altered or amended in order: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Rule 59(e) is considered an "extraordinary remedy" which the Fourth Circuit has cautioned should be used only "sparingly" in exceptional circumstances. Id. Such motions should not be used "to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Id. Ultimately, the decision to grant or deny a Rule 59(e) motion is a matter within the

6

Court's discretion. See Robinson, 599 F.3d at 407. Because Rule 59(e) allows for challenges based on new evidence and errors of law, the Plaintiff's Motion comes under Rule 59(e) to the extent that it concerns new evidence or the need to correct a clear error of law.

The Plaintiff's Motion also moves for relief based on alleged misrepresentations, which are not listed as grounds for relief under Rule 59(e). Federal Rule of Civil Procedure 60(b), however, allows the Court to "relieve a party or [her] legal representative from a final judgment, order, or proceeding for . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . . ." Fed. R. Civ. P. 60(b). To obtain relief under Rule 60(b), the movant must also establish that her motion was timely filed, that she has a meritorious defense to the action, and that there would be no unfair prejudice to the nonmoving party by having the judgment set aside. Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir. 1998). Rule 60(b) is an "extraordinary remedy . . . ." Compton v. Alton Steamship Co., Inc., 608 F.2d 96, 102 (4th Cir. 1979) (citation and internal quotation marks omitted). Relief from judgment under Rule 60(b)(6) should be granted only upon a showing that relief is "appropriate to accomplish justice" in "situations involving extraordinary circumstances." Dowell v. State Farm Fire Cas. Auto. Ins. Co.,

7

Case 1:18-cv-00367-MR-WCM   Document 53   Filed 09/09/20   Page 7 of 12

993 F.2d 46, 48 (4th Cir. 1993) (internal quotation marks and citation omitted). Because misrepresentations are grounds for relief under Rule 60(b)(3), the Plaintiff's claim for relief based on alleged misrepresentations arises under that Rule.

Accordingly, the court will construe the Plaintiff's Motion under Rule 59(e) to the extent that is based on newly discovered evidence or errors of law and under Rule 60(b)(3) to the extent that it is based on alleged misrepresentations.

## III. DISCUSSION

### A. Newly Discovered Evidence

The Plaintiff first claims that she has newly discovered evidence justifying relief under Rule 59(e)(2). [Doc. 46 at 6]. The Plaintiff's Motion, however, does not provide any new evidence at all. Instead, the Motion cites to the transcript hearing and other documents that were already submitted to the Court before it issued its June 29, 2020 Order. [Doc 46 at 15-18]. Because the Plaintiff has presented no new evidence, her first basis for relief is without merit.

### B. Errors of Law

The Plaintiff next claims that the Court's June 29 Order contains errors of law justifying relief under Rule 59(e)(3). [Doc. 46 at 6]. Specifically, the

8

Plaintiff argues that the Court erred by ruling that an enforceable agreement exists and by approving a settlement that violates the North Carolina Open Meetings Law, N.C. Gen. Stat. § 143-318.11. [Doc. 46 at 4, 18-30].

The Plaintiff makes arguments now that she either made or could have made in her briefs and during the hearing. [Docs. 29; 33; 45]. As such, those arguments do not constitute a basis for relief under Rule 59(e). <u>Pacific Ins. Co.</u>, 148 F.3d at 403 (stating that Rule 59 motions should not be used "to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.").[5] Accordingly, the Plaintiff's second basis for relief is without merit.

### C. Misrepresentations

The Plaintiff also seeks relief under Rule 60(b)(3), arguing that the Defendants misrepresented at the hearing that Mr. Jolly was legally

---

[5] Moreover, the Plaintiff's argument concerning the North Carolina Open Meetings Law is without merit. That law explicitly allows public bodies, such as the Board of Trustees, to enter closed sessions to "consider and give instructions to an attorney concerning the handling or settlement of a claim, judicial action, mediation, arbitration, or administrative procedure." N.C. Gen. Stat. § 143-318.11(a)(3). While the Plaintiff claims that the Board of Trustees needed to document their approval of the settlement on their minutes, the North Carolina Open Meetings Law requires the Board to enter the settlement "into its minutes as soon as possible within a reasonable time *after the settlement is concluded*." <u>Id.</u> (emphasis added). Because the Plaintiff attempted to void the settlement before it could be effectuated, the settlement was not concluded. As such, the Board of Trustees did not violate the law by not entering the settlement agreement into its minutes.

authorized to sign the Memorandum of Settlement; that Defendant Gold, Defendant Matheny, and Defendant Dalton had apparent authority to sign the Memorandum of Settlement on behalf of the Board of Trustees; and that Mr. Jolly had signed a "General Release" that was filed with the Court. [Doc. 46 at 7, 24].

Mr. Jolly submitted a Declaration stating that the Board of Trustees of Isothermal Community College "granted me authority to sign a settlement agreement on the Board's behalf that is in keeping with the terms stated in the Memorandum of Settlement completed at the mediation." [Doc. 24-2: Jolly Dec. at ¶ 1]. The Plaintiff has submitted no evidence challenging that Declaration. As such, the Defendants did not misrepresent that Mr. Jolly was legally authorized to sign the Memorandum of Settlement.

While the Plaintiff alleges that the Defendants' misrepresented during the hearing that Defendant Gold, Defendant Matheny, and Defendant Dalton had apparent authority to sign the settlement agreement, that statement was merely a legal argument by the Defendants' counsel that explicitly relied on "concepts of apparent authority[.]" [Doc. 45 at 39]. A plausible argument that applies legal concepts to the uncontested facts of a case simply does not constitute a misrepresentation to the Court.

Although the Plaintiff also claims that the Defendants misled the Court by stating that Mr. Jolly signed a "General Release" document, there is no evidence from which the Court can conclude that this was a misrepresentation because no party has provided any evidence to show whether Mr. Jolly has signed such a document. Moreover, any representation regarding whether Mr. Jolly had signed a "General Release" had no effect on the Court's June 29 Order because that Order was not based on such a document being signed by Mr. Jolly.

More troublingly, while the Plaintiff's asserts that Defendants' counsel misrepresented during the hearing that he had "filed [the signed General Release] with the Court[,]" [Doc. 46 at 24], the Court's review of the transcript reveals that the Defendants' counsel never stated that he had filed a General Release with the Court at all. Instead, he stated that "I have two copies of that document here today . . . ." [Doc. 45 at 37-38]. The Court admonishes the Plaintiff that misrepresenting the record in a filing before the Court constitutes grounds for sanctions and is inappropriate, particularly when asserting that opposing counsel has made a misrepresentation to the Court.

For these reasons, the Court concludes that the Plaintiff's third basis for relief is without merit.

## IV. CONCLUSION

After careful consideration, the Court finds no basis in fact or law to set aside its June 29 Order enforcing the settlement between the parties. Accordingly, the Plaintiff's Motion will be denied.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's *pro se* "Motion for Relief from Judgment Pursuant to F.R.C.P. 60(b), and Staying Appeal Deadline Pursuant to F.R.C.P 4(a)(4)(A)(vii)" [Doc. 46] is **DENIED**.

**IT IS SO ORDERED.**

Signed: September 9, 2020

Martin Reidinger
Chief United States District Judge